**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------

**RAYMOND A. BRYANT and**
**NU-POETS PRODUCTIONS,**

                  **06 Civ 4200 (WGY)**

            **Plaintiffs,**

                  **Memorandum and Order**

      **-against-**

**BRIAN CROWE,**

               **Defendant.**
-----------------------------------------

**WILLIAM G. YOUNG, United States District Judge.**[1]

**I.    INTRODUCTION**

This case was brought by a community activist who alleges various abuses by the Newburgh, New York police and a state trooper, as well as First Amendment violations by the City of Newburgh.  The individual police officers and the City of Newburgh (the "City Defendants") filed a motion to dismiss the First Amendment claims and a motion for partial summary judgment. Separately, Brian Crowe ("Crowe"), the state trooper, moved for partial summary judgment.  Prior to the oral argument, the individual police officers and the City of Newburg settled with the plaintiffs.  Because Crowe incorporated the arguments made by the City Defendants, this opinion draws from both motions.

**II.    FACTS**

Raymond Bryant is a community activist in Newburgh, New York.  Third Am. Compl. ¶ 2.  He belonged to a community organization that began videotaping police activity in March

---

[1] Of the District of Massachusetts, sitting by designation.

2005.  Id. ¶ 13.  On May 17, 2005, Bryant was videotaping several police officers making an arrest.  Id. ¶ 15.  After using an obscenity, Bryant was arrested at approximately 7:20 p.m. by the City of Newburgh police and charged with disorderly conduct, resisting arrest and harassment second.  City Defs.' Statement of Facts ¶¶ 1-2.  The disorderly conduct charge, filed by Police Officer Vasta on May 18, 2005, alleged that Bryant "did use abusive or obscene language or make obscene gestures in a public place by stating in a loud voice in front of uninvolved civilians 'You Think [sic] this is a fucking joke.'"  Id. ¶ 2, Posner Aff., Ex. B.  Vasta also filed the resisting arrest charge on May 18, 2005, alleging that Bryant "did actively resist being handcuffed by failing to place his hands behind his back when told to do so and tried to fight with officers."  Id. ¶ 3, Posner Aff., Ex. C.

State Trooper Crowe filed the harassment second charge on May 18, 2005, alleging that Bryant "did kick this officer in the inside of his right leg while this officer was attempting to effect the lawful arrest of Disorderly Conduct."  Id. ¶ 4, Posner Aff., Ex. D.  At the time, State Trooper Crowe was working in conjunction with the Newburg Police Department on a joint task force called Operation Impact.  "The task force protocols provided that local authorities (the Newburgh police) take the lead in investigating and effectuating arrests and that state authorities function in primarily a back-up capacity."  Crowe Decl. ¶ 5.

2

After Bryant was arrested and placed inside a marked police car owned by the City of Newburgh, the driver's side rear glass window shattered. City Defs.' Statement of Undisputed Facts ¶ 5. The parties dispute how the glass shattered. Nonetheless, Police Officer Vasta filed a charge for criminal mischief third against Bryant at 7:44 a.m. on May 18, 2005, stating that "the defendant did kick the drivers [sic] side rear glass window out smashing it and causing damage to the componets [sic] inside the door working all the power devices." Posner Aff., Ex. E. Detective Joseph Cortez submitted a supplement report on May 18, 2005, which stated:

> Mr. Bryant was placed into my patrol vehicle, number 133, as I walked to the drivers [sic] door Mr. Bryant forcibly struck the rear drivers-side [sic] window, shattering it. The force was so great that the shards of glass struck me in my arms and face, causing minor cuts on my left and right forearms.

City Defs.' Statement of Undisputed Facts ¶ 6, Ex. H. Similarly, State Trooper Crowe explained:

> After being brought to the ground and handcuffed, plaintiff was placed in the rear seat driver's side of a Newburgh patrol car to be brought to the station for processing. After he was placed in the car and the car door had been closed, I heard a loud crashing sound. I immediately turned my head to see what had occurred. Mr. Bryant had kicked out the window of the driver's side rear door. There was glass all over the back seat of the car on and next to Mr. Bryant. I knew that Mr. Bryant had kicked out the window because he was the only individual in or around the car who had access to that window. There were no other civilians or officers in close proximity to the driver's side rear door window.

Crowe Decl. ¶ 8.

In addition to the statements by State Trooper Crowe and Officer Cortez regarding what they saw during the arrest on May

3

17, 2005, three non-party eye witnesses testified at depositions in 2007 regarding what they saw when Bryant was arrested. Veronica King testified that "[Bryant] kicked the glass." Posner Aff., Ex. K, King Dep. at 27:6 (Aug. 30, 2007). Paul Sanders testified that he thought the window shattered because the door was slammed. Posner Aff., Ex. L, Sanders Dep. at 54:15-17 (Aug. 30, 2007). Betzaida Rodriguez testified, "I remember they threw him in there and they slammed the door and all I seen was glass everywhere." Posner Aff., Ex. M, Rodriguez Dep. at 37:20-22 (Oct. 4, 2007).

In his police report, Police Officer Cortez explained that after the window was shattered, Bryant was transported to police headquarters. City Def.'s Statement of Undisputed Facts, Ex. H. While he was being booked, Bryant stated that he felt nauseous. Id. He "then threw himself on the floor and stated he needed an ambulance." Id. Shortly thereafter, Bryant was transported to St. Luke's Hospital for treatment. Beginning at 9:15 p.m. until 9:27 p.m. on May 17, 2005, while at the hospital, Bryant prepared and signed a written statement in which he stated, "[w]hen I was inside the car I felt that I could not breath [sic], so I kicked the window out." City Defs.' Statement of Facts ¶ 7, Posner Aff., Ex. I. Bryant recanted that statement in his deposition in 2007, arguing that he made it "when he was dazed and after he had recently been given pain medication." Bryant Response to Statement of Facts ¶ 7 (citing Sussman Aff. Ex. 2, Bryant Dep. at 99:20-21 (Aug. 28, 2007)).

4

At some point, Bryant was arraigned and remanded to the Orange County Jail. The record does not contain any information about the arraignment. Bryant remained in jail until his preliminary hearing on the criminal mischief charge on May 25, 2005. At the hearing, Police Officer Vasta testified on behalf of the city, as did a mechanic who inspected the car. Posner Aff., Ex. F, Preliminary Hearing at 2, New York v. Bryant, No. 05-02289. These were the only two witnesses at the hearing. Id. Vasta testified only that he heard the window shatter, not that he saw it shatter. Id. at 19-20, 33. The mechanic testified that the rear window was broken out of the car and the molding holding the window in place was bent "[f]rom inside of the vehicle out." Id. at 38-39. Based on the testimony of these two witness, the court held that there was insufficient evidence to show reasonable cause that Bryant committed a felony. The court stated:

> Based upon the testimony of Officer Vasta, the underlying problem here is that Officer Vasta did not actually see Mr. Bryant break the window. He testified that he heard the smashing of a window. Then he turned and looked. But he did not ever testify that he actually saw Mr. Bryant breaking the window. The Court certainly cannot speculate as to how the window got broken.

Id. at 55. In addition, the court found "a possibility that [the mechanic] may be a biased witness" because he did repeat work for the City of Newburgh. Id. at 55. All charges arising out the May 2005 arrest were dismissed in March 2006. City Def.'s Statement of Undisputed Facts ¶ 12. Based on this incident, Bryant filed a complaint alleging that his constitutional rights

5

were violated by the use of excessive force, and by false arrest and malicious prosecution.  Third Am. Compl. ¶¶ 40-41.

## III. RULINGS OF LAW

### A.   Legal Standard

Upon a motion for summary judgment, a court must grant the motion "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the motion, the court must view the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in favor of that party. Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). On a motion for partial summary judgment, where there are any disputed issues of fact, the court must assume that the nonmovant's version of the disputed issue of fact is correct. See Arizona v. Maricopa Count Medical Soc., 457 U.S. 332, 339 (1982). The moving party bears the burden of showing that he or she is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment when the moving party has carried its burden, the nonmoving party has to show that the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To make such a showing, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec.

6

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   If
the nonmoving party relies upon evidence that is merely
colorable, or is not significantly probative, the court may grant
summary judgment.   Anderson, 477 U.S. at 249-50.   Similarly,
"conclusory statements, conjecture, or speculation by the party
resisting the motion will not defeat summary judgment."   Kulak v.
City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

### B.    False Arrest and Malicious Prosecution for Criminal Mischief Charge

Incorporating the City Defendants' arguments, Crowe moved
for summary judgment on the claims for false arrest and malicious
prosecution based on the May 17, 2005, criminal mischief arrest.
Crowe Mem. at 2.   "A claim for false arrest pursued under [42
United State Code] Section 1983 arises out of [a] plaintiff's
Fourth Amendment right to be free from unreasonable seizures,
'which includes the right to remain free from arrest absent
probable cause.'"   Espada v. Schneider, 522 F. Supp. 2d 544, 551
(S.D.N.Y. 2007) (quoting Jaegly v. Couch, 439 F.3d 149, 151 (2d
Cir. 2006)).   The Second Circuit analyzes such a claim under the
state law in which the arrest was made.   Davis v. Rodriguez, 364
F.3d 424, 433 (2d Cir. 2004).   The tort of false arrest in New
York is the same as false imprisonment.   Posr v. Doherty, 944
F.2d 91, 96 (2d Cir. 1991).   Under New York law, the elements of
a false imprisonment claim are "(1) the defendant intended to
confine [the plaintiff], (2) the plaintiff was conscious of the
confinement, (3) the plaintiff did not consent to the confinement
and (4) the confinement was not otherwise privileged."   Singer v.

<u>Fulton County Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995) (quoting <u>Broughton</u> v. <u>State</u>, 335 N.E.2d 310, 314 (N.Y. 1975)) (internal quotations omitted).

        1.    Importance of Probable Cause for Initial Arrest

Crowe argues that there is no need for probable cause for a felony committed after a person is in custody.  Crowe Reply at 2. As explained above, the criminal mischief third charge arose due to the police car's rear window glass shattering after Bryant already was restrained and placed in the police car for the other charges.  In support of his argument, Crowe cites <u>Ba</u> v. <u>New York City Police Dep't.</u>, No. 99-11984, 2001 WL 1098019 (S.D.N.Y. Sept. 19, 2001).  In <u>Ba</u>, the plaintiff was arrested on a charge of assault, and was later charged with sexual abuse for fondling a police officer as she attempted to fingerprint him.  <u>Id.</u> at *2. In discussing the false arrest claim for the sexual abuse charge, the court explained that the disputed factual issues regarding the event did not preclude summary judgment because "Ba had already been seized and was already in custody . . . based on [a charge with] ample and undisputed probable cause . . . ."  <u>Id.</u> at *6.  The court concluded that "even if Ba could establish that he was falsely accused of sexual abuse, he did not sustain a constitutional injury in the nature of false arrest."  <u>Id.</u> Likewise, Crowe cites <u>Corbett</u> v. <u>White</u>, No. 00-4661, 2001 WL 1098054 (N.D. Ill. Sept. 17, 2001), where the police officer had probable cause to arrest the plaintiff for failing to produce his driver's license and, thus, there was no basis for a claim for

8

false arrest based on subsequent charges. These cases are not applicable to the present controversy.

In the present motion, Crowe does not challenge the legal sufficiency of the false arrest claim for the initial charges of disorderly conduct, resisting arrest, and harassment second. Because the facts remain in dispute about the legal sufficiency of the initial arrest, the Court must assume that Bryant's version of the facts is correct. See Maricopa County Medical Soc., 457 U.S. at 339. For purposes of this motion, then, the Court assumes that there was no probable cause for the initial arrest. As a result, Bryant is not foreclosed from maintaining a false arrest claim based on the criminal mischief third charge simply because the issue arose after the initial arrest.

     2.   Definition of Probable Cause

Through the City Defendants, Crowe argues that there was probable cause for Bryant's criminal mischief third arrest. Crowe Mem. at 2. The existence of probable cause "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of

9

the arrest and immediately before it."  Caldarola v. Calabrese,
298 F.3d 156, 162 (2d Cir. 2002) (internal quotations omitted).

As the Second Circuit makes clear, probable cause is
assessed **at the time of the arrest.**  None of the parties have
discussed this legal issue in their briefs.  In their Statement
of Undisputed Facts, the City Defendants specified that Bryant
was arrested at approximately 7:20 p.m. on May 17, 2005.  But
Bryant was arrested at 7:20 p.m. only for disorderly conduct,
resisting arrest and harassment second.  Bryant was in custody,
handcuffed, in the back seat of the police car, when the event
occurred resulting in his "arrest" for criminal mischief third.
Because he was already in custody for other charges, his liberty
was already taken and there was no need to "re-arrest" Bryant.
Therefore, before this court can assess probable cause for the
criminal mischief charge, it must determine the appropriate time
frame for assessing probable cause.

3.    Definition of Arrest

Under different circumstances, both the Supreme Court and
the Second Circuit have provided definitions of an "arrest".  In
Henry v. United States, 361 U.S. 98 (1959), the Supreme Court
considered the issue of whether probable cause existed for
federal agents to stop a car and question the inhabitants.
Neither party disputed that an "arrest" had taken place and the
Supreme Court held that "[w]hen the officers interrupted the two
men and restricted their liberty of movement, the arrest, for
purposes of this case, was complete."  Id. at 103.

10

Similarly, in United States v. Viale, 312 F.2d 595 (2d Cir. 1963), the Court considered the propriety of warrantless arrests by Internal Revenue Service agents during a raid of a wagering hideout.  Because Internal Revenue Service agents had no authority for warrantless arrests, the court had to determine if the agents had authority as private persons authorized to arrest another "for a crime, committed or attempted in his presence" under the New York Code of Criminal Procedure.  Thus, the court had to determine the meaning of "presence" and "arrest".  Relying on Henry and the definition of "arrest" in the New York Code of Criminal Procedure, the Second Circuit held that the arrests "took place at the moment [the perpetrators] submitted to the custody of the Agents . . . ."  Id. at 601.

Other circuits have considered the issue in situations more similar to this one – where an "arrest" occurred while the accused was already in custody – and held that an arrest occurs only at the time of initial seizure.  See Garionis v. Newton, 827 F.2d 306, 310 (8th Cir. 1987) ("An arrest presumes that the person arrested was at liberty, free from police custody, before the arrest.");  United States v. Rundle, 450 F.2d 517, 520 (3d Cir. 1971) ("[T]he sole physical attribute of an arrest is the taking into custody.");  Hayes v. United States, 367 F.2d 216, 221 (10th Cir. 1966) ("An arrest presumes taking the prisoner into custody and there could be no arrest of a prisoner who is already in custody.")  Those cases, however, rely upon the fact that the

plaintiff was legally in custody at the time of the challenged
arrest.

More recently, the Second Circuit recognized in dicta that
one of several definitions of "[a]rrest includes the keeping
under restraint of one so 'detained" until brought before a
magistrate . . . ."   Posr v. Doherty, 944 F.2d 91, 97 (2d Cir.
1991) (quoting Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466,
473 (1972)).  Such a definition makes sense particularly when the
initial detention was unlawful.  In such circumstances, the
"arrest" continues as long as the person is unlawfully in
custody.  When a person is unlawfully confined, an arrest is not
just the taking of a person into custody, but keeping that person
in custody.  See Black's Law Dictionary, 124 (9th ed. 2009)
(defining an arrest as "[t]he taking or keeping of a person in
custody by legal authority, esp. in response to a criminal
charge").

> 4.   False Arrest Claim Cannot Stand from Moment Where
>       Probable Cause Exists

Nonetheless, in the situation where the arrest is ongoing,
if probable cause ever attaches while a person is in custody, a
false arrest claim cannot be maintained from that point forward.
This conclusion is supported by New York v. Harris, 495 U.S. 14
(1990), where the Supreme Court held that evidence from a lawful
arrest need not be suppressed even though the suspect was
initially in custody from an unlawful arrest.  In that case, the
New York City police had probable cause to believe that Harris
had committed murder.  Id. at 15.  Three officers went to Harris'

apartment to take him into custody.  The police officers knocked on Harris' door and displayed identification.  Harris let the officer into his apartment where they read Harris his <u>Miranda</u> rights.  <u>Id.</u> at 16.  The police officers did not have a warrant to arrest Harris at this point.  Harris, however, acknowledged that he understood his rights and confessed to the murder.  The officers arrested Harris and took him to the police station, where they again informed him of his <u>Miranda</u> rights and Harris signed a written inculpatory statement.  <u>Id.</u>  Because the police did not have a warrant for his arrest, the arrest within Harris' home was unlawful and the original confession was suppressed.  <u>Id.</u>  At issue before the Court was the signed statement.  In determining that the statement need not be suppressed, the Court held that "[b]ecause the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given <u>Miranda</u> warnings, and allowed to talk."  <u>Id.</u>

In assessing probable cause, courts look to the "totality of the circumstances" and "must be aware that probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."  <u>Panetta</u> v. <u>Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006) (citing <u>Calderola</u> v. <u>Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002).  As a fluid concept, the existence of probable cause can change during an individual's confinement.

13

The Newburg police charged Bryant with criminal mischief for breaking a window in a police car.  In supporting their argument that probable cause existed, the City Defendants primarily relied on the fact that Officer Cortez purportedly saw Bryant shatter the glass and that Bryant signed a statement admitting to shattering the glass.  City Defs.' Mem. at 11.  Cortez's eye-witness account and Bryant's signed confession established probable cause as of 9:27 p.m. on May 17, 2005.  See, e.g., Bowman v. City of Middletown, 91 F. Supp. 2d 644 (S.D.N.Y. 2000) (holding that the police had probable cause to arrest suspect based on his signed confession).  Although Bryant disavowed the statement in his deposition two years later, the police do not have to assume at the time of a confession that the accused will recant the statement.  See id. at 660-61.

Bryant argues that the evidence relied upon by the defendants is insufficient to support probable cause because Officer Cortez never specified in the police report how Bryant shattered the window and there is no evidence that Vasta, the charging officer, spoke to Cortez or read Bryant's statement before charging Bryant with criminal mischief third.  Opp. at 9-11.  As this Court has determined that probable cause existed as of 9:27 p.m., when Bryant signed his statement, it is immaterial whether Vasta, as the charging officer, received that information.  "The existence of probable cause need not be assessed on the basis of the knowledge of a single officer." Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).  At that

14

time, the collective knowledge of the police officers was sufficient to support an arrest. Moreover, Bryant's speculation, without a factual basis, that the police officers did not share information amongst themselves is not sufficient evidence for defeating summary judgment. Hicks v. Baines, No. 06-3782, 2010 WL 346710, at *5 (2d Cir. Feb. 2, 2010) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)). Therefore, Bryant cannot maintain a claim for false arrest after 9:27 p.m. on May 17, 2005.

     5.   Timing of Arraignment

In cases where both a false arrest and a malicious prosecution claim are brought based on a warrantless arrest, damages for the false arrest cover the time period from the arrest through the arraignment and damages for the malicious prosecution cover the time period from the arraignment through the end of the proceedings. Singer, 63 F.3d at 116-17 (citing W. Keeton et al., Prosser and Keeton on the Law of Torts § 119, at 888 (5th ed. 1984)). As discussed above, Bryant has no claim for false arrest beginning at 9:27 p.m. on May 17, 2005. Neither party provided facts regarding the arraignment in this case. The City Defendants stated in their Statement of Undisputed Facts that "[a]t his initial arraignment Mr. Bryant had been remanded to the Orange County Jail on 'felony bail' due to the fact that the criminal mischief third charge was a felony." City Defs.'

15

Statement of Undisputed Facts ¶ 10.  Bryant, however, disputed
this fact and rightly pointed out that the evidence cited by the
City Defendants did not support this fact.  Bryant
Counterstatement ¶ 10.  Bryant himself alleges both false arrest
and malicious prosecution without providing any allegations or
evidence regarding an arraignment.

     Nonetheless, the Court will assume that Bryant was arraigned
at some point prior to the preliminary hearing on May 25, 2005,
such that he theoretically could maintain a malicious prosecution
claim.  As with false arrest, the existence of probable cause is
a complete defense to malicious prosecution.  Savino v. City of
New York, 331 F.3d 63, 72 (2d Cir. 2003).  As explained above,
probable cause existed as of 9:27 p.m. on May 17, 2005.  Because
probable cause is a fluid concept, however, it can be eliminated
even where it existed at the time of arrest.  Lowth v. Town of
Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996).  "In order for
probable cause to dissipate, the groundless nature of the charges
must be made apparent by the discovery of some intervening fact."
Id.  Even if Bryant had alleged or produced evidence regarding
the arraignment, he did not produce any evidence that came to
light before the preliminary hearing on May 25, 2005, that called
into question the probable cause established by his signed
statement.  Bryant's disavowal of his signed statement at his
deposition in 2007 cannot eliminate the existence of probable
cause in May 2005.  Therefore, summary judgment based on Bryant's

16

claim for malicious prosecution for the criminal mischief third charge is granted.

### C. Qualified Immunity for Criminal Mischief Arrest

Crowe argues that because there was arguable probable cause for the criminal mischief third charge, he has qualified immunity from any claim arising from that charge. Crowe Mem. at 3. Because the Court determined that probable cause existed from 9:27 p.m. on May 17, 2005, forward, it must consider whether arguable probable cause existed before that time.

Summary judgment on the basis of qualified immunity must be denied if a rational jury could find that "no officer of reasonable competence could have made the same choice in similar circumstances" because it was unreasonable for the officer to "believe that he was acting in a fashion that did not clearly violate an established federally protected right." Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995). If the court concludes that a rational jury could find that reasonably competent police officers could, under the circumstances, disagree about the legality of the arrest, summary judgment is appropriate. Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." See Baker v. McCollan, 443 U.S. 137, 145-46 (1979).

Bryant argues that Crowe could not arguably have had probable cause because he did not see the window shatter and only

17

described seeing glass in the car, suggesting that the window broke as a result of an external force. Opp. at 20. Bryant provides no case law to support his contention that arguable probable cause can be based only on Crowe's observations. There were four eye-witnesses to the window crashing. Two lay witnesses testified that the window broke as the door slammed. Posner Aff., Ex. L, Sanders Dep. at 54:15-17; Posner Aff., Ex. M, Rodriguez Dep. at 37:20-22. One lay witness said that Bryant kicked the window and Police Officer Cortez wrote in his report that Bryant "forcibly struck" the window. See Posner Aff., Ex. K, King Dep. at 27:6; City Defs.' Statement of Undisputed Facts ¶ 6; Posner Aff., Ex. H. Even if Crowe believed that an external force caused the window to break, Cortez could have believed, based on his personal observation, that Bryant struck the window. Because the only conclusion a rational jury can reach is that reasonable officers could disagree about the cause of the window shattering, and thus disagree about the existence of probable cause to "arrest" Bryant for criminal mischief, this Court rules that arguable probable cause existed within moments of the window shattering and Bryant cannot maintain a false arrest claim from that point forward.

> **D.  Malicious Prosecution Claim against Crowe for Disorderly Conduct, Resisting Arrest and Criminal Mischief Charges**

18

Crowe argues that because he did not bring the charges of disorderly conduct, resisting arrest or criminal mischief[2] against Bryant, there is no basis for a malicious prosecution claim against him based on those charges. Crowe Mem. at 5. Bryant counters that because Crowe was Vasta's partner, he should be held liable. Opp. at 20.

To recover for a claim of malicious prosecution, Bryant must establish the elements of malicious prosecution under New York law: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor."  Rohman v. New York City Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000) (quoting Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999)). The first element is established where "officers brought formal charges and had the person arraigned, . . . or filled out complaining and corroborating affidavits, . . . or swore to and signed a felony complaint . . . ."  Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005).

In making his argument that Crowe is not entitled to summary judgment on this point because he was working in concert with Vasta, Bryant does not cite any case law.  Nor does Bryant

---

[2] As discussed above in Section II.B.5, there was probable cause to hold Bryant after his arraignment, and thus the malicious prosecution claim for that charge has already been dismissed.

19

support his argument with any facts establishing that the state trooper and Newburgh police officer were working in conjunction. Even were this Court to recognize that the record does contain information that Crowe was partnered with Vasta that evening, Sussman Aff., Ex. 1, Preliminary Hearing at 22, New York v. Bryant, No. 05-02289, that fact does not lead to the conclusion that Vasta bore any responsibility in maliciously prosecuting Bryant. For example, in Llerando-Phipps, while the court held that a jury could find an officer liable despite the fact that he did not bring the formal charges or fill out a complaining affidavit, that officer reported the evidence to the complaining officer. 390 F. Supp. 2d at 383. But Bryant has not provided any evidence to suggest that Crowe played a role in the charges for disorderly conduct, resisting arrest or criminal mischief.

Finally, it is not clear in what way Bryant suffered a deprivation of his constitutional rights for malicious prosecution based on these charges as the police officers had probable cause to detain Bryant based on the criminal mischief charge and Bryant did not allege any other deprivation of his constitutional rights.

**E.   ORDER**

State Trooper Crowe's Motion for Partial Summary Judgment [Doc. No. 33] is **GRANTED**. Therefore, the claim for false arrest based on the criminal mischief third charge is dismissed. Because the police officers had arguable probable cause to detain Bryant for criminal mischief third after the car window

20

shattered, the claim for false arrest based on the disorderly conduct, resisting arrest, and harassment second remains only up until that point.  All claims for malicious prosecution are dismissed for the reasons discussed above and because there are no allegations of a deprivation of constitutional rights other than Bryant's detention.  Finally, the claim for excessive force remains.

       **SO ORDERED.**

                                                **William G. Young**
                                                **United States District Judge**

**Dated:**
**March 8, 2010**

21